No. 23-2450

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

Christian Labor Association, *et al.*,

Plaintiff-Appellants,

v.

City of Duluth, *et al.*,

Defendants-Appellees.

Appeal from the United States District Court
for the District of Minnesota
Case No. 0:21-cv-227

## ANSWERING BRIEF OF DEFENDANTS-APPELLEES

Jessica J. Fralich
Elizabeth Sellers Tabor
Paige Orcutt
DULUTH CITY ATTORNEY'S OFFICE
411 W. First St., Suite 410
Duluth, MN 55802

*Counsel for City of Duluth*

Monte A. Mills
Amran Farah
Emily M. McAdam
GREENE ESPEL PLLP
222 S. Ninth St., Suite 2200
Minneapolis, MN 55402

*Counsel for City of Cloquet, City
of Two Harbors, and Western
Lake Superior Sanitary District*

January 16, 2024

Jonathan D. Newman
Lucas R. Aubrey
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh St., N.W., Suite 1000
Washington, D.C. 20001
(202) 785-9300

Timothy W. Andrew
ANDREW & BRANSKY
302 W. Superior St., Suite 300
Duluth, MN 55802

*Counsel for Duluth Building and
Construction Trades Council*

## SUMMARY OF THE CASE

"This case begins and ends with standing." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). It concerns challenges to now-removed union security provisions in project labor agreements used by the cities of Duluth, Cloquet, and Two Harbors to organize their construction projects, and to a project labor agreement used by Western Lake Superior Sanitary District, which did not contain a union security provision (together, "PLAs").

The challenges were brought by an employee who has never worked, or sought to work, on PLA projects; by contractors that do not have third-party standing and that have not and will not seek to work on PLA projects; and by a labor organization that has no members, and whose affiliated local unions have no members who ever worked, or sought to work, on PLA projects.

None of the Plaintiffs-Appellants have standing. This Court should affirm the district court's decision granting summary judgment to the Defendants-Appellees. Appellees do not believe oral argument is necessary but request fifteen minutes if the Court holds oral argument.

i

# CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Defendants-Appellees City of Duluth, City of Cloquet, City of Two Harbors, Western Lake Superior Sanitary District, and Duluth Building and Construction Trades Council provide the following corporate disclosure statement:

The City of Duluth, the City of Cloquet, and the City of Two Harbors are municipalities incorporated under Minnesota law.  They have no parent companies, and no publicly held company holds ten percent or more of their stock.

The Western Lake Superior Sanitary District is a special purpose unit of government established under Minn. Stat. ch. 458D.  It has no parent companies, and no publicly held company holds ten percent or more of its stock.

The Duluth Building and Construction Trades Council is a labor organization and an unincorporated association.  It has no parent companies, and no publicly held company holds ten percent or more of its stock.

Appellate Case: 23-2450     Page: 3     Date Filed: 01/16/2024 Entry ID: 5353760

Defendants-Appellees are not aware of any nonparty, publicly held corporations with financial interests in the outcome of this proceeding.

iii

# TABLE OF CONTENTS

Summary of the Case ........................................................ i

Corporate Disclosure Statement ............................... ii

Table of Authorities ................................................... vi

Statement of the Issues ................................................ 1

Statement of the Case .................................................. 2

    I.    Factual Background ............................................. 5

        A.    The Project Labor Agreements ..................... 5

        B.    Plaintiffs ........................................................ 7

    II.    Procedural Background ..................................... 11

Summary of Argument ............................................... 14

Argument ..................................................................... 18

    I.    Standard of Review ........................................... 18

    II.    None of the Plaintiffs Have Standing. ............... 19

        A.    Krhin, the Only Employee Remaining in the
                Case, Lacks Standing. ................................. 20

            1.    Krhin Never Experienced and Never Will
                    Experience Any Compelled Subsidization of
                    Any Union. ............................................ 20

            2.    Krhin's "Lost Work Opportunities" Are Not
                    Injuries to Legally Protected Interests
                    Under the First Amendment. ............... 25

            3.    No Injury Is Fairly Traceable to the
                    Removed Union Security Provisions. ... 26

Appellate Case: 23-2450    Page: 5    Date Filed: 01/16/2024 Entry ID: 5353760

4.      Krhin Was and Is Excluded from the PLAs' Coverage.............................................. 28

B.      CLA Does Not Have Associational Standing. .............. 34

C.      The Contractors Do Not Have Standing. ..................... 37

III.    Plaintiffs' Claim for Prospective Relief Against the Now-Removed Union Security Requirements Is Moot. ........ 41

IV.     Plaintiffs' Constitutional Claim Fails on the Merits. ........... 45

A.      The PLAs Cover Private-Sector Employees, and the Supreme Court Has Held that Union Security Clauses Covering Private Sector Employees Are Constitutional. ................................................. 46

B.      This Court Has Recognized that *Janus* Is Limited to Its Facts .................................................... 50

C.      Other Circuits Hold that *Janus* Does Not Apply in the Private Sector. ...................................... 54

D.      The PLAs Not Only Cover Only Private-Sector Employment, but the PLAs' Economic Terms Are Set by Private-Sector Collective Bargaining. .............. 55

E.      The Removed Union Security Provisions Did Not Require Union Membership. ........................................ 56

Conclusion ........................................................................ 58

Certificate of Compliance .................................................................

Certificate of Service.........................................................................

v

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Abood v. Detroit Bd. of Educ.*,
   431 U.S. 209 (1977) ................................................................. 46, 48

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ....................................................................... 38

*AGRED Found. v. U.S. Army Corps of Eng'rs*,
   3 F.4th 1069 (8th Cir. 2021) ...................................................... 1, 26

*Allen v. Wright*,
   468 U.S. 737 (1984) .................................................................... 19, 39

*Arizonans for Off. Eng. v. Arizona*,
   520 U.S. 43 (1977) ......................................................................... 42

*Associated Builders & Contractors W. Pa. v. Cmty. Coll. of
   Allegheny Cnty.*, 81 F.4th 279 (3d Cir. 2023) ......................... *passim*

*Baisley v. Int'l Ass'n of Machinists*,
   983 F.3d 809 (5th Cir. 2020) ...................................................... 54, 55

*Bierman v. Dayton*,
   900 F.3d 570 (8th Cir. 2018) ........................................................... 27

*Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated
   Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218
   (1993) .............................................................................................. 2

*Boudreaux v. La. State Bar Ass'n*,
   No. 22-30564, 2023 U.S. App. LEXIS 30142 (5th Cir. Nov.
   13, 2023) ......................................................................................... 52

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000) ........................................................................ 25

vi

*Button v. Dakota, Minn. & E. R.R. Corp.*,
963 F.3d 824 (8th Cir. 2020) ........................................................ 31

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ...................................................................... 42

*Carney v. Adams*,
141 S. Ct. 493 (2020) .................................................................... 39

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................ 19, 23

*Cole v. Homier Distrib. Co.*,
599 F.3d 856 (8th Cir. 2010) .................................................... 31, 35

*Crowe v. Or. State Bar*,
989 F.3d 714 (9th Cir. 2021) ........................................................ 52

*CWA v. Beck*,
487 U.S. 735 (1988) .............................................................. *passim*

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*,
958 F.3d 38 (1st Cir. 2020).......................................................... 26

*Dunnet Bay Constr. Co. v. Borggren*,
799 F.3d 676 (7th Cir. 2015) ........................................................ 41

*Fair v. Norris*,
480 F.3d 865 (8th Cir. 2007) .......................................................... 4

*File v. Martin*,
33 F.4th 385 (7th Cir. 2022),
*cert. denied*, 91 U.S.L.W. 3180 (U.S. Jan. 23, 2023) ...................... 52

*Finneman v. Laidlaw*,
57 F.4th 605 (8th Cir. 2023) ........................................................ 45

*Fleck v. Wetch*,
937 F.3d 1112 (8th Cir. 2019) ....................................50, 51, 52, 53

Appellate Case: 23-2450     Page: 8     Date Filed: 01/16/2024 Entry ID: 5353760

*Garang v. City of Ames,*
    2 F.4th 1115 (8th Cir. 2021) ........................................................ 31

*Genesis HealthCare Corp. v. Symczyk,*
    569 U.S. 66 (2013) ..................................................................... 42

*Grahek v. City of St. Paul,*
    84 F.3d 296 (8th Cir. 1996) ........................................................ 41

*Hanten v. Sch. Dist. of Riverview Gardens,*
    183 F.3d 799 (8th Cir. 1999) ...................................................... 27

*Harris v. Quinn,*
    573 U.S. 616 (2014) .................................................... 49, 50, 55

*Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.,*
    813 F.3d 1124 (8th Cir. 2016) .................................................... 27

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977) ............................................................ 13, 34

*Int'l Ass'n of Machinists v. Street,*
    367 U.S. 740 (1961) ........................................................ *passim*

*Int'l Longshoremen's Ass'n v. Davis,*
    476 U.S. 380 (1986) .................................................................. 29

*Janus v. AFSCME Council 31,*
    138 S. Ct. 2448 (2018) .................................................... *passim*

*Jenkins v. Winter,*
    540 F.3d 742 (8th Cir. 2008) ....................................................... 4

*Keller v. State Bar of Cal.,*
    496 U.S. 1 (1990) ................................................................ 51, 52

*Lathrop v. Donohue,*
    367 U.S. 820 (1961) ............................................................ 51, 52

Appellate Case: 23-2450    Page: 9    Date Filed: 01/16/2024    Entry ID: 5353760

*Locke v. Karass*,
　555 U.S. 207 (2009) .................................................................. 48, 49

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ...................................................1, 19, 20, 25, 39

*Marquez v. Screen Actors Guild*,
　525 U.S. 33 (1998) ....................................................................... 3, 56

*McCarthy v. Ozark Sch. Dist.*,
　359 F.3d 1029 (8th Cir. 2004) .......................................................... 43

*Minn. State Bd. for Cmty. Colls. v. Knight*,
　465 U.S. 271 (1984) ......................................................................... 27

*Missouri ex rel. Nixon v. Craig*,
　163 F.3d 482 (8th Cir. 1998) ..................................................... 41, 42

*Missouri v. Biden*,
　52 F.4th 362 (8th Cir. 2022),
　*cert. denied*, 92 U.S.L.W. 3073 (U.S. Oct. 10, 2023) ...................... 26

*Mitchell v. Dakota Cnty. Soc. Servs.*,
　959 F.3d 887 (8th Cir. 2020) ........................................................... 38

*Muff v. Wells Fargo Bank*,
　71 F.4th 1094 (8th Cir. 2023) .......................................................... 20

*Mulvenon v. Greenwood*,
　643 F.3d 653 (8th Cir. 2011) .............................................................. 4

*Nagel v. United Food & Com. Workers Loc. 653*,
　63 F.4th 730 (8th Cir. 2023) ............................................................ 18

*Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993).......................................... 40, 41

*NLRB v. Broyhill Co.*,
　514 F.2d 655 (8th Cir. 1975) ........................................................... 32

Appellate Case: 23-2450　　Page: 10　　Date Filed: 01/16/2024 Entry ID: 5353760

*NLRB v. Gen. Motors Corp.*,
373 U.S. 734 (1963) ...............................................56, 57

*NLRB v. Health Care & Ret. Corp. of Am.*,
511 U.S. 571 (1994) ............................................... 29

*NLRB v. Ky. River Cmty. Care, Inc.*,
532 U.S. 706 (2001) ............................................... 29

*Oakwood Healthcare, Inc.*,
348 N.L.R.B. 686 (2006) ................................... 32

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007) ............................................... 45

*Phelps-Roper v. City of Manchester*,
697 F.3d 678 (8th Cir. 2012) (en banc)..................... 42, 43

*Popp v. Air Line Pilots Ass'n, Int'l*,
No. 19-cv-61298, 2020 U.S. Dist. LEXIS 52813 (S.D. Fla.
Mar. 25, 2020) ................................................ 54

*Rauner v. AFSCME Council 31*,
No. 15-cv-1235, 2015 U.S. Dist. LEXIS 65085 (N.D. Ill. May
19, 2015) ...................................................... 38

*Redd v. Depuy Orthopaedics, Inc.*,
700 F. App'x 551 (8th Cir. 2017) (per curiam)................... 30, 31, 35

*Rizzo-Rupon v. Int'l Ass'n of Machinists Dist. 141*,
822 F. App'x 49 (3d Cir. 2020) ........................... 54

*Ry. Emps.' Dep't v. Hanson*,
351 U.S. 225 (1956) ...........................................*passim*

*Schell v. Chief Just. & Justs. of the Okla. Sup. Ct.*,
11 F.4th 1178 (10th Cir. 2021) ........................... 52

*Schnuck Mkts., Inc. v. NLRB*,
961 F.2d 700 (8th Cir. 1992) ...............................29, 32, 33

x

*Scott v. Harris*,
　　550 U.S. 372 (2007) ........................................................................ 18

*Shimose v. Int'l Longshore Union Loc. 142*,
　　No. 21-cv-489, 2023 U.S. Dist. LEXIS 56155 (D. Haw. Mar.
　　31, 2023) ........................................................................................ 54

*Spokeo, Inc. v. Robins*,
　　578 U.S. 330 (2016) ........................................................................ 19

*Summers v. Earth Island Inst.*,
　　555 U.S. 488 (2009) .............................................................. 1, 35, 36

*Tatum v. Robinson*,
　　858 F.3d 544 (8th Cir. 2017) ........................................................ 42

*Taylor v. Buchanan*,
　　4 F.4th 406 (6th Cir. 2021) ........................................................... 52

*Teague v. Cooper*,
　　720 F.3d 973 (8th Cir. 2013) ........................................................ 43

*Transdev Servs., Inc. v. NLRB*,
　　991 F.3d 889 (8th Cir. 2021) ........................................................ 33

*TransUnion LLC v. Ramirez*,
　　141 S. Ct. 2190 (2021) ............................................................. 19, 20

*U.S. Dep't of Just. v. Mandanici (In re Starr)*,
　　152 F.3d 741 (8th Cir. 1998) ........................................................ 45

*W. Va. State Bd. of Educ. v. Barnette*,
　　319 U.S. 624 (1943) ........................................................................ 25

*Warth v. Seldin*,
　　422 U.S. 490 (1975) ................................................... 1, 13, 25, 37

*Yates v. Rexton, Inc.*,
　　267 F.3d 793 (8th Cir. 2001) ........................................................ 19

Appellate Case: 23-2450　　Page: 12　　Date Filed: 01/16/2024 Entry ID: 5353760

*Yeransian v. B. Riley FBR, Inc.*,
   984 F.3d 633 (8th Cir. 2021) ........................................................ 38

*Young Am.'s Found. v. Kaler*,
   14 F.4th 879 (8th Cir. 2021) ........................................... 1, 20, 43, 45

## Statutes

29 U.S.C. § 152(2) ........................................................................ 47

29 U.S.C. § 152(3) ........................................................................ 49

29 U.S.C. § 152(11) ...................................................................... 29

29 U.S.C. § 158(f)(2) ...................................................................... 3

29 U.S.C. § 186(c)(4) .................................................................... 53

29 U.S.C. § 431(b) ........................................................................ 34

Cloquet, Minn., City Code § 9.2.02 .............................................. 41

Declaratory Judgment Act, 28 U.S.C. § 2201 ............................ 16, 37, 38

Duluth, Minn., Legis. Code § 2-29(b) .......................................... 41

Two Harbors, Minn., City Code § 2.77 ........................................ 41

## Other Authorities

29 C.F.R. § 401.15 ........................................................................ 34

Fed. R. App. P. 28(a)(8)(A) ............................................................ 4

Fed. R. Civ. P. 56 .......................................................................... 18

Fed. R. Civ. P. 56(a) ...................................................................... 28

Fed. R. Civ. P. 56(c)(1) .................................................................. 20

Fed. R. Civ. P. 56(e) (former) ........................................................ 20

Appellate Case: 23-2450   Page: 13   Date Filed: 01/16/2024 Entry ID: 5353760

U.S. Const. amend. I ................................................ *passim*

U.S. Const. amend. XIV ................................................ 11

U.S. Const. art. III ............................................ 1, 13, 19, 42

Appellate Case: 23-2450    Page: 14    Date Filed: 01/16/2024 Entry ID: 5353760

## STATEMENT OF THE ISSUES

**I.** Was the district court correct in holding that the Plaintiffs-Appellants lack standing, where neither the Plaintiff Employee nor the Plaintiff Contractors ever worked, nor will work in the future, on projects subject to the PLAs, and where the Christian Labor Association cannot identify one member with standing?

- U.S. Const. art. III

- *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)

- *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)

- *Warth v. Seldin*, 422 U.S. 490 (1975)

- *AGRED Found. v. U.S. Army Corps of Eng'rs,* 3 F.4th 1069 (8th Cir. 2021)

**II.** Did the removal of the challenged union security provisions from the PLAs moot Plaintiffs-Appellants' claim for prospective relief?

- *Young Am.'s Found. v. Kaler*, 14 F.4th 879 (8th Cir. 2021)

**III.** If any of the Plaintiffs-Appellants have standing, was the district court correct in granting summary judgment on the merits where the now-removed union security provisions did not apply to public employees

1

and instead applied only to private-sector employees whose employment was governed by the National Labor Relations Act?

- *CWA v. Beck*, 487 U.S. 735 (1988)

- *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961)

- *Ry. Emps.' Dep't v. Hanson*, 351 U.S. 225 (1956)

## STATEMENT OF THE CASE

The Cities of Duluth, Cloquet, and Two Harbors, Minnesota and the Western Lake Superior Sanitary District ("Sanitary District") (together, "Public Entities") each require contractors performing construction on the Public Entities' projects to use and abide by a PLA with the Duluth Building and Construction Trades Council ("Building Trades") and its affiliate local unions (together, "Unions"). App. 6-7 n.3; R. Doc. 144, at 2-3 n.3. A PLA is a collective-bargaining agreement that is often "between a project owner, contractors, and unions that sets the terms and conditions of employment for a particular construction project" or projects. *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 283 (3d Cir. 2023); *see Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 221-22 (1993).

2

On January 18, 2021, the Plaintiffs[1] brought First Amendment and antitrust facial challenges to the PLAs. App. 703-13; R. Doc. 1, at 1-11. Their First Amendment challenge concerned union security clauses and provisions covering referral of employees through the signatory unions' hiring halls. App. 24; R. Doc. 144, at 20. A union security clause in a collective bargaining agreement requires employees working under that agreement to pay dues or fees to a union as a condition of continued employment. *See Marquez v. Screen Actors Guild*, 525 U.S. 33, 36 (1998); 29 U.S.C. § 158(f)(2).

The First Amendment challenge concerning union security provisions alleged that those provisions in certain of the PLAs were unconstitutional under the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). App. 710-11; R. Doc. 1, at 8-9.[2] In *Janus*, the Supreme Court held that an Illinois law forcing public employees to subsidize a union even if they chose not to join the union

---

[1] The Plaintiffs-Appellants will be referred to throughout this brief collectively as "Plaintiffs."

[2] "The Sanitary District's PLA did not contain a union-security provision." App. 7 n.4; R. Doc. 144, at 3 n.4; *see* Opening Br. 3 n.4.

Appellate Case: 23-2450   Page: 17   Date Filed: 01/16/2024 Entry ID: 5353760

and objected to positions the union took in collective-bargaining related activities violated the Constitution. 138 S. Ct. at 2459-60.

The district court granted the Defendants'[3] motion to dismiss the antitrust claim and their motion for summary judgment on both aspects of the constitutional challenge. App. 623-27; R. Doc. 44, at 28-32 (dismissing antitrust claim); App. 5-33; R. Doc. 144, at 1-29 (granting summary judgment on the constitutional claims). Plaintiffs appeal only the district court's grant of summary judgment concerning their lack of standing and their challenge to the now removed union security provisions. Opening Br. 1-2, 45-49.[4]

---

[3] The Defendants-Appellees will be referred to throughout this brief collectively as "Defendants."

[4] Plaintiffs have waived any appeal regarding the merits of their dismissed antitrust claim and their First Amendment claim concerning the referral provisions in the PLAs. *See, e.g.*, *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011); *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived."); *Fair v. Norris*, 480 F.3d 865, 869 (8th Cir. 2007); Fed. R. App. P. 28(a)(8)(A) (The appellant's brief must contain their "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").

Appellate Case: 23-2450   Page: 18   Date Filed: 01/16/2024 Entry ID: 5353760

# I.    Factual Background

## A.    *The Project Labor Agreements*

The PLAs "establish a framework for labor-management cooperation and stability" to ensure "timely completion" of construction projects "without interruption or delay." App. 444; R. Doc. 116, at 4 (Two Harbors); App. 513; R. Doc. 103, at 4 (Duluth); App. 528; R. Doc. 102, at 4 (Sanitary District); App. 543; R. Doc. 101, at 4 (Cloquet). The PLAs also help "establish and stabilize wages, hours and working conditions" for employees on covered projects, and "establish effective and binding methods for the settlement of all misunderstandings, disputes or grievances." App. 444-45; R. Doc. 116, at 4-5 (Two Harbors); App. 513; R. Doc. 103, at 4 (Duluth); App. 528; R. Doc. 102, at 4 (Sanitary District); App. 543; R. Doc. 101, at 4 (Cloquet).

Each PLA is limited to construction work on covered projects and applies to "all Contractors of whatever tier who have been awarded contracts for work covered by [the] Agreement." App. 514; R. Doc. 103, at 5 (Duluth); App. 529; R. Doc. 102, at 5 (Sanitary District); App. 544; R. Doc. 101, at 5 (Cloquet); *see* App. 445; R. Doc. 116, at 5 (Two Harbors) (similar). The PLAs apply only to craft employees. Managerial

5

employees and supervisors, as defined by the National Labor Relations Act, are excluded from the PLAs' coverage. App. 446; R. Doc. 116, at 6 (Two Harbors); App. 515; R. Doc. 103, at 6 (Duluth); App. 530; R. Doc. 102, at 6 (Sanitary District); App. 545; R. Doc. 101, at 6 (Cloquet).

At the time the Plaintiffs filed their complaint, the PLAs for the Cities of Duluth, Cloquet, and Two Harbors contained union security provisions. App. 124; R. Doc. 121-1, at 4 (Duluth); App. 138; R. Doc. 121-2, at 4 (Cloquet); App. 177; R. Doc. 121-3, at 4 (Two Harbors).

On March 22, 2021, the City of Duluth amended its PLA, removing the union security provision. App. 690, 694; R. Doc. 27-1, at 1, 5. The City of Cloquet removed the union security provision in its PLA on March 16, 2021, App. 668-669, 673; R. Doc. 29-1, at 2-3, 7, and the City of Two Harbors did the same on March 22, 2021, App. 646, 651; R. Doc. 30-1, at 2, 7. The amended PLAs not only removed the union security provisions but added clauses that affirmatively state: "Nothing in this Agreement requires employees to join a union or pay dues or fees to a union as a condition of working on the covered project." App. 672; R. Doc. 29-1, at 6 (Cloquet); App. 650; R. Doc. 30-1, at 6 (Two Harbors); App. 693; R. Doc. 27-1, at 4 (Duluth).

6

Before the union security provisions were removed, none of the Unions had ever enforced the union security provisions against an employee of a contractor that was not otherwise independently signatory to a local area labor agreement with the Union(s).  App. 497 para. 15; R. Doc. 105, at 5 para. 15.  Therefore, no employee working under any of the PLAs for a contractor that was not itself otherwise party to a collective bargaining agreement with one of the Unions has ever been required to become a union member or pay any dues or fees as a condition of working under the PLAs.

## B.  Plaintiffs

The Plaintiffs are an employee, a labor organization, and three contractors.  Plaintiff Luke Krhin is a member of a Christian Labor Association ("CLA") local union and has worked for Plaintiff Nordic Group Inc. ("Nordic") since 2015.  App. 380; R. Doc. 117, at 76.  Krhin has never worked on a PLA-covered project and has never tried to work on a PLA-covered project  App. 384-85; R. Doc. 117, at 80-81.

Nordic promoted Krhin to site superintendent in approximately 2018.  App. 382; R. Doc. 117, at 78.  Krhin testified in his deposition that he spends approximately sixty percent of his time "manag[ing] crews,

7

manag[ing] on-site production and building, [and] manag[ing] the other trades and subcontractors coming in" to "mak[e] sure everything is moving." *Id.* The other forty percent of his time is spent working with tools. *Id.*

Krhin estimates labor hours for bids, purchases materials without prior approval from management, coordinates with project owners, and assigns daily tasks to employees. App. 382-83; R. Doc. 117, at 78-79. Krhin participates in interviews of job applicants and makes hiring recommendations that management typically follows. App. 382; R. Doc. 117, at 78. He also makes recommendations about terminations, disciplines employees, and advises management when a layoff is necessary. App. 383-84; R. Doc. 117, at 79-80.

Plaintiff Nordic is a general contractor specializing in marine, civil, and building construction. App. 351; R. Doc. 117, at 47. Nordic has never bid on or worked on any construction project subject to any of the Public Entities' PLAs. App. 361; R. Doc. 117, at 57. On November 7, 2022, over nineteen months *after* the removal of the union security provisions, Nordic declared that it is "unwilling to bid on projects subject to the . . . PLAs" and that it "has refused to bid on projects subject to PLAs in the

past." App. 269 paras. 8-9; R. Doc. 121-11, at 2 paras. 8-9. Nordic refuses to bid for work covered by the PLAs for financial reasons wholly unrelated to the now removed union security provisions and because, as its corporate deponent admitted, it misunderstands how the PLAs work. App. 362-63; R. Doc. 117, at 58-59.

Plaintiff Kaski, Inc. ("Kaski") is a general contractor that repairs underground utilities and performs construction work. App. 310-11; R. Doc. 117, at 6-7. Most of Kaski's construction work involves commercial projects, like apartment buildings and retail establishments. App. 313-14; R. Doc. 117, at 9-10. Kaski also performs construction on civil projects, like culvert replacements, road rebuilds, and sewer/water restoration. App. 313; R. Doc. 117, at 9. The only PLA-covered project Kaski ever bid on for any of the Public Entities was work on a pump station project for the Sanitary District. App. 327-28; R. Doc. 117, at 23-24. Kaski was awarded the bid and subcontracted all the work out to other contractors. App. 328; R. Doc. 117, at 24. None of its employees performed work on the project.

Like Nordic, on November 7, 2022, over nineteen months after the union security provisions were removed from the PLAs for the Cities of

9

Duluth, Two Harbors, and Cloquet, Kaski declared that it "is unwilling to bid on projects" covered by any of the PLAs and that it "has refused to bid on projects subject to PLAs in the past." App. 263 paras. 8-9; R. Doc. 121-10, at 2 paras. 8-9. Kaski refuses to bid on PLA-covered projects for a range of business and financial reasons, including project size, qualifications, and bid security requirements, none of which concern the PLAs' now removed union security provisions. App. 330-32; R. Doc. 117, at 26-28.

Plaintiff Roen Salvage Co. ("Roen") specializes in marine construction. App. 391; R. Doc. 117, at 87. It has never bid on or worked under any of the Public Entities' PLAs. App. 404; R. Doc. 117, at 100. Roen "just [doesn't] bother with" PLA-covered projects "because there [is] other work for us to bid and utilize our resources on." App. 405; R. Doc. 117, at 101. Like Kaski and Nordic, well after the removal of the union security provisions in the PLAs, Roen declared that it is "unwilling to bid on projects subject to the . . . PLAs, and Roen has refused to bid on projects subject to PLAs in the past." App. 273 para. 7; R. Doc. 121-12, at 2 para. 7.

10

Plaintiff CLA is a national labor organization with seven affiliated local unions. App. 417-18; R. Doc. 117, at 113-14. CLA reports zero members on its annual LM-2 reports filed with the Department of Labor. App. 433; R. Doc. 117, at 129. No member of a CLA-affiliated local union has ever worked on projects covered by the PLAs nor been required to pay dues or fees because of the now removed union security provisions in the PLAs. App. 424; R. Doc. 117, at 120.

## II. Procedural Background

In January 2021, Plaintiffs filed a complaint against the Public Entities and the Building Trades, claiming that their PLAs violated the First and Fourteenth Amendments and antitrust law. App. 703-13; R. Doc. 1, at 1-11. The district court granted the Defendants' motion to dismiss in part, dismissing the antitrust claim in July 2021. App. 627; R. Doc. 44, at 32. Defendants answered the complaint that month. App. 555-60; R. Doc. 49, at 1-6; App. 561-84; R. Doc. 48, at 1-24; App. 585-95; R. Doc. 47, at 1-11.

After discovery, the parties filed cross-motions for summary judgment in November 2022. App. 730-32. The district court denied the Plaintiffs' motion and granted Defendants' motion, holding that (1)

Appellate Case: 23-2450     Page: 25     Date Filed: 01/16/2024 Entry ID: 5353760

Plaintiffs lack standing, and (2) Plaintiffs' constitutional claim fails as a matter of law. App. 4; R. Doc. 145, at 1.

Starting with Krhin, the district court found that he was a supervisor and thus "not subject to the PLAs" and "not in danger of a direct injury in this case." App. 19; R. Doc. 144, at 15. Therefore, the district court held, he lacks standing. *Id.*

Based in part on evidence of Krhin's role in hiring, the district court concluded that Krhin used his independent judgment to exercise supervisory authority in the interest of his employer. App. 18-19; R. Doc. 144, at 14-15. Though Plaintiffs submitted a declaration from Nordic's co-owner and vice president that contended that Krhin's recommendations are not accepted without independent investigation and that Krhin had authority only to assign *work* (not entire projects), the district court noted that the declaration offered "no specifics" to back up those claims. App. 19; R. Doc. 144, at 15. The district court also disregarded a declaration Krhin submitted after his deposition that contradicted his testimony. App. 18; R. Doc. 144, at 14.

The district court held that Kaski, Nordic, and Roen (together, "Contractors") lack standing. App. 20; R. Doc. 144, at 16. In so holding,

12

the district court noted that all parties agreed that "Plaintiffs' constitutional claim belongs to the employees, not the employers." *Id.* Because the "Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party," the Contractors do not have standing. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Finally, the district court found that CLA does not have associational standing because it failed to show that "its members would otherwise have standing to sue in their own right." App. 20; R. Doc. 144, at 16 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). With zero members (according to the testimony of CLA President Joni Tulenchik), CLA "cannot identify a member with standing." App. 22; R. Doc. 144, at 18. Moreover, because no member of the CLA locals was ever "compelled . . . to pay dues to any [Building Trades] labor organization," the district court found that it "would have to engage in speculation in order to find that any particular member meets the criteria for standing." App. 23; R. Doc. 144, at 19.

Even though it found that none of the Plaintiffs had standing, the district court addressed the merits of their constitutional claims, and found that *Janus* does not apply to the PLAs' now removed union security

clauses because *Janus* "involved public-sector unions." App. 30; R. Doc. 144, at 26. Here, "the PLAs do *not* cover employees of the Public Entities. That distinction matters." *Id.* Therefore, because "the employees working under the PLAs are employees of private-sector employers," the district court found that the union security provisions do not violate the First Amendment. App. 32; R. Doc. 144, at 28.

## SUMMARY OF ARGUMENT

**I.** None of the Plaintiffs have standing to pursue the remaining First Amendment claim regarding the removed union security provisions. That claim belongs to Krhin, the only remaining employee, and he lacks standing to assert it. He works for a contractor that refused to bid on any PLA-covered projects in the past and won't do so in the future, even though the union security provisions have been removed. Krhin never experienced and never will experience any required subsidization of the unions because he never was subject to the PLAs' terms. Moreover, Plaintiffs failed to show that Krhin desires to, actually did, or intends to work on PLA-covered projects.

Krhin's claimed injury of lost work opportunities is not an injury to the legally protected First Amendment interests he asserts in this case.

14

His claim is that the now-removed union security provisions required the subsidization of the Unions without his consent, but Krhin has never been required to subsidize any of the Unions.

Krhin's alleged lost work opportunities, even if considered an actual injury, are not fairly traceable to the challenged union security provisions. Krhin's employer, Nordic, refuses to bid on PLAs for reasons wholly unrelated to the challenged union security provisions. Indeed, the Court need look no further than the fact that Nordic and every other Contractor continues to refuse to bid on PLA-covered projects even though those PLAs no longer include any union security provisions.

The district court also correctly found that Krhin is a supervisor who would not have been covered by the PLAs even if his employer worked on projects subject to the PLAs. As an excluded employee, Krhin would never have been injured by the PLAs even if he had worked on projects covered by the PLAs. Therefore, Krhin lacks standing.

CLA lacks associational standing because Plaintiffs failed to identify any members with standing to sue in their own right. CLA's president testified that CLA has zero members. The district court did not abuse its discretion in declining to consider her conflicting

15

declaration. As shown above, CLA local union member Krhin lacks standing, and no CLA local union member has ever worked on a PLA-covered project, paid dues to any of the Unions, nor been at risk of being required to do so.

Plaintiffs and Defendants agree that the constitutional claim at issue belongs to Krhin, and that the Contractors have no third-party standing to assert that claim. That should be end of the Contractors' claim because they lack third-party standing to bring it.

The Contractors, however, assert that because they seek relief under the Declaratory Judgment Act, they have standing. The Declaratory Judgment Act is not an independent basis for standing. Instead, the Contractors must demonstrate standing on their own, which they have failed to do. Each of the Contractors submitted declarations in which they state that they have refused to bid on PLA projects. Indeed, Nordic and Roen have never bid on PLA-covered projects, and Kaski has never performed construction work with its own employees on a PLA-covered project. Each of the Contractors' declarations also state that they will not bid on PLA-covered projects in the future. Their refusal to bid in the past and in the future demonstrates that they have not been injured

16

by the union security provisions of the PLAs. Moreover, their refusal to bid on PLA-covered projects is for reasons unrelated to the now removed union security provisions. Well after the union security provisions were removed, the Contractors each swore under penalty of perjury that they remained unwilling to bid on projects subject to the PLAs. Therefore, to the extent that the Contractors' refusal to bid on PLA-covered projects injured them, that injury was not caused by the now removed union security provisions. Moreover, such an injury is not fairly traceable to the challenged union security provisions.

II. Plaintiffs' claim for prospective relief against the now-removed union security requirements is moot because it is not virtually certain that the Public Entities will reenact union security requirements in their PLAs. Each Public Entity unanimously voted to remove the union security provisions, and the Building Trades supported the amendments.

III. If the Court addresses the merits, it should affirm the district court's holding that *Janus* does not apply. By its own terms, *Janus* applies only to public-sector bargaining relationships. The Supreme Court's jurisprudence concerning private-sector bargaining relationships under the National Labor Relations Act governs the question of whether

17

the union security requirements here are constitutional. Federal courts have unanimously refused to apply *Janus* when, as here, other binding Supreme Court cases directly apply.

Furthermore, *Janus* is distinguishable where, as here, no employee could have had their dues automatically deducted by the Public Entities even when the union security provisions were in the PLAs, and where the economic terms of the PLAs are set through private collective bargaining and do not involve inherently political speech.

## ARGUMENT

### I. Standard of Review

This Court reviews decisions granting or denying summary judgment de novo, affirming when the evidence presents no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. *Nagel v. United Food & Com. Workers Loc. 653*, 63 F.4th 730, 733 (8th Cir. 2023); Fed. R. Civ. P. 56. The Court views the evidence in the light most favorable to the nonmoving party unless the nonmovant's version of the facts is blatantly contradicted by the record such that no reasonable jury could believe it. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

18

The Court reviews a district court's "exclusion of evidence in a summary judgment motion for abuse of discretion." *Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001).

## II.    None of the Plaintiffs Have Standing.

"The law of Article III standing, which is built on separation-of-power principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see Allen v. Wright*, 468 U.S. 737, 752 (1984) ("[T]he law of Art. III standing is built on a single basic idea — the idea of separation of powers."). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v.*

19

*Ramirez*, 141 S. Ct. 2190, 2207 (2021). That burden requires supporting each element of standing "with the manner and degree of evidence required at the successive stages of litigation." *Muff v. Wells Fargo Bank*, 71 F.4th 1094, 1100 (8th Cir. 2023) (quoting *Young Am.'s Found. v. Kaler*, 14 F.4th 879, 887 (8th Cir. 2021)). At the summary judgment stage, plaintiffs "must 'set forth' by affidavit or other evidence 'specific facts'" demonstrating standing. *Lujan*, 504 U.S. at 561 (quoting former Fed. R. Civ. P. 56(e)); *see also* Fed. R. Civ. P. 56(c)(1) (A party must cite to "particular parts" of the record establishing standing or show that no admissible evidence can be cited to demonstrate standing.).

## A. *Krhin, the Only Employee Remaining in the Case, Lacks Standing.*

### 1. *Krhin Never Experienced and Never Will Experience Any Compelled Subsidization of Any Union.*

The district court found that Krhin did not have standing because as a supervisor, he was exempt from the PLAs. App. 19; R. Doc. 144, at 15. Plaintiffs assert that regardless of whether Krhin is a supervisor, he will "remain[] injured by the defendants' enforcement of the PLAs." Opening Br. 34. Yet Plaintiffs admitted during oral argument below that it is "undisputed that none of the plaintiffs have had to join, associate

20

with . . . or pay money to the unions under the PLAs." App. 71-72; R. Doc. 151, at 38-39. Rather than pointing to any actual enforcement, Plaintiffs rely on lost "work opportunities," arguing that the PLAs "have prevented (and continue to prevent) [Krhin's employer] from obtaining work on the covered projects." Opening Br. 34. According to Plaintiffs, Krhin suffered an actual injury "because his *employer* will not bid on projects subject to the defendants' PLAs." *Id.* at 34-35.

Plaintiffs have it precisely backwards. The fact that Nordic has refused and will continue to refuse to bid on projects covered by the PLAs does not establish any injury to Krhin. It demonstrates the opposite: Krhin never was required to subsidize a union pursuant to the now removed union security clauses, nor has such an injury ever been imminent because his employer will not bid on projects covered by the PLAs. Stated differently, Krhin has never been subject to the PLAs and therefore, by definition, has never had to comply with the now removed union security provisions that are challenged. He "never experienced and never will experience a compelled association or economic harm." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 289 (3d Cir. 2023).

21

*Associated Builders & Contractors Western Pennsylvania* involved a challenge to PLAs by employees who, like Krhin, did not belong to a union affiliated with a building and construction trades council. There, as in this case, the employees attempted to establish standing by asserting that they had lost the opportunity to work on projects covered by PLAs because their employers would not bid on such projects. 81 F.4th at 286. The contractors in that case, like those here, submitted declarations that stated they "did not and 'will not bid' on . . . PLA-covered projects, but that they are ready and able to bid on future projects should the PLAs be removed." *Id.* at 285.

Rather than showing an injury, the Third Circuit held that "when the contractors declare they never have and never will bid on PLA-covered projects, they plead themselves out of court by admitting they never experienced and never will experience a compelled association or economic harm." 81 F.4th at 289. And with respect to the contractors' employees, the contractors' declarations showed that the employees had not been and will not be subjected to the terms of the PLAs. *Id.* at 290. Because, like here, the employees pled "no facts . . . that they desire to, actually did, or intend to work on PLA-covered public projects," the

22

employees failed to show any actual or imminent injury caused by the PLAs and did not have standing. *Id.*

Here, Krhin works for Nordic — a Contractor that categorically refuses to bid on PLAs. *See* App. 362-63; R. Doc. 117, at 58-59. Therefore, Krhin was never subject to the PLAs' requirements or at risk of working under a PLA. Nor has Krhin shown that a future injury is "certainly impending." *Clapper*, 568 U.S. at 414. First, the union security clauses about which Krhin complains have been removed. Second, even if those clauses remained, Krhin's employer categorically will not bid on PLA-covered projects. Instead, an extended, "speculative chain of possibilities" stands between Krhin and any injury arising from the removed union security provisions of the PLAs. *Id.* Krhin would be forced to subsidize any of the Unions only if:

(1) Nordic changed its policy and started to bid on PLA-covered projects;

(2) One of the Public Entities selected Nordic to work on a PLA-covered project;

(3) Nordic assigned Krhin to work on the PLA-covered project;

23

(4)     The Public Entities and the Building Trades amended their PLAs to reinstitute the union security requirement; and

(5)     A union affiliated with the Building Trades decided, for the first time ever, to compel an employee of a nonunion contractor to pay dues.

Each of those steps is highly speculative. To start, Nordic has never bid on any of the Public Entities' PLAs. App. 361; R. Doc. 117, at 57. Even if Nordic reverses that policy and starts bidding on PLA-covered projects, a Public Entity is not guaranteed to select it to work on one of those projects. Nordic's vice president testified that Nordic does not always meet bid requirements on public projects. Twice, for example, Nordic wasn't qualified to bid because it lacked experience on similar jobs. App. 364; R. Doc. 117, at 60. Plus, even if Nordic met all the bid requirements, a Public Entity might select another contractor.

If Nordic won a PLA-covered project, it would then have to decide whether to assign Krhin to work on that project. *See* App. 385; R. Doc. 117, at 81. If Nordic did assign Krhin, the PLAs today would actually *protect* Krhin from injury. The PLAs expressly state that no employee is required to join or pay dues or fees to a union. App. 446; R. Doc. 116, at

Appellate Case: 23-2450     Page: 38     Date Filed: 01/16/2024 Entry ID: 5353760

6 (Two Harbors); App. 515; R. Doc. 103, at 6 (Duluth); App. 530; R. Doc. 102, at 6 (Sanitary District); App. 545; R. Doc. 101, at 6 (Cloquet). Krhin's only chance of suffering the complained about injury-in-fact would be for a Public Entity to reinstate a union security provision and for a Building Trades affiliate to require him to join or pay dues, though none of the Unions has ever required employees of non-union contractors to do so, *see* App. 497 para. 15; R. Doc. 105, at 5 para. 15.

>    2.    *Krhin's "Lost Work Opportunities" Are Not Injuries to Legally Protected Interests Under the First Amendment.*

Standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). To establish injury-in-fact, Krhin had to show that he suffered "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. "[J]ob losses, in and of themselves, are not an injury to a legally protected First Amendment interest . . . ." *Associated Builders & Contractors W. Pa.*, 81 F.4th at 288-89. Instead, injuries to legally protected First Amendment interests include being forced to speak, *e.g.*, *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943), or to associate, *e.g.*, *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 661 (2000). Here, Krhin asserts the interest at stake in *Janus v. AFSCME Council 31*, which is the right to be free from

Appellate Case: 23-2450    Page: 39    Date Filed: 01/16/2024 Entry ID: 5353760

compelled subsidization of public-sector unions' speech. 138 S. Ct. 2448, 2486 (2018).

Krhin never was required to subsidize any Building Trades union, and will never be at risk of joining or paying anything to a Building Trades union. Even when the now-removed union security clauses were in effect, no employee working for a nonsignatory contractor was ever required to become a union member or pay any dues or fees as a condition of working under a PLA. App. 497 para. 15; R. Doc. 105, at 5 para. 15.

### 3. No Injury Is Fairly Traceable to the Removed Union Security Provisions.

Krhin has the burden of showing "a sufficiently direct causal connection between the challenged action [here, the PLAs' now removed union security provisions] and the identified harm. That connection cannot be overly attenuated." *AGRED Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021) (quoting *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020)); *see Missouri v. Biden*, 52 F.4th 362, 369 (8th Cir. 2022), *cert. denied*, 92 U.S.L.W. 3073 (U.S. Oct. 10, 2023) (No. 22-1248). Plaintiffs argue that Krhin has standing "because his *employer* will not bid on projects subject to the defendants' PLAs." Opening Br. 34-35.

Krhin's employer, however, chooses not to bid on PLA-covered projects for reasons that have nothing to do with the challenged union security provisions, including potential financial exposure with unfunded liabilities with respect to some of the unions' pension funds, having to subcontract more work, and its contractual obligations to CLA. *See* App. 362-63; R. Doc. 117, at 58-59; *see also* App. 75; R. Doc. 151, at 42 (Nordic is unwilling to bid on PLA-covered projects due to the PLAs' pension provisions.).[5]

Nordic's continued refusal to bid on PLA-covered projects even after the union security clauses were removed demonstrates beyond question

---

[5] Nordic and other Contractors asserted that the PLAs harm them because they require the Contractors to recognize the Unions, as opposed to the CLA. App. 109-110 para. 5; R. Doc. 128-2, at 1-2 para. 5; App. 113 para. 14; R. Doc. 128-3, at 3 para. 14. That alleged harm is far removed from the challenged union security provisions at issue. Moreover, the PLAs' requirement to recognize the Unions is constitutional. *See, e.g.*, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 806-07 (8th Cir. 1999) (holding that a school district's preference for contractors that enter into an agreement with unions affiliated with local AFL-CIO building trades council was constitutional); *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1130 (8th Cir. 2016) (similar); *see also Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018) (relying on *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), to hold that a Minnesota statutory requirement concerning exclusive representation is constitutional).

Appellate Case: 23-2450     Page: 41     Date Filed: 01/16/2024 Entry ID: 5353760

that any lost work opportunities experienced by Krhin were not caused by the provisions he challenges as violating his First Amendment rights. Long after the union security clauses were removed, Krhin's employer — Nordic — continues to refuse to bid on any project subject to the PLAs. Thus, even if Krhin suffered an actual injury due to alleged lost job opportunities, that injury cannot be fairly traceable to the union security provisions he challenges.

### 4. Krhin Was and Is Excluded from the PLAs' Coverage.

The district court held that Krhin lacked standing because he was excluded from the PLAs' coverage as a supervisor. App. 14-19; R. Doc. 144, at 10-15. Plaintiffs assert that "[t]he defendants bear the burden of proving that Krhin is a supervisor," Opening Br. 33, but that is a misstatement of the applicable standard. Under Rule 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law" *with respect to a "claim or defense . . .* on which summary judgment is sought" (emphasis added). Plaintiffs' claim is that Krhin is an employee covered by the PLAs who was injured by the PLAs' now removed union security provisions. To prevail on summary

Appellate Case: 23-2450     Page: 42     Date Filed: 01/16/2024 Entry ID: 5353760

judgment, Plaintiffs must have presented undisputed evidence showing that Krhin is a craft employee. *See Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 394-95 (1986) (similar burden applies to the party claiming preemption). They failed to do so and have failed to dispute Defendants' evidence of Krhin's supervisory status.

Under the National Labor Relations Act, a worker is a supervisor if

> (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions [in 29 U.S.C. § 152(11)], (2) their "exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment," and (3) their authority is held "in the interest of the employer."

*NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 713 (2001) (quoting *NLRB v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 573-74 (1994)). Among the listed supervisory functions is authority to hire, lay off, discharge, assign, or discipline employees, or to effectively recommend that action. 29 U.S.C. § 152(11).

"[A]n individual's ability to exercise *any one* of the listed powers justifies the finding of supervisory status." *Schnuck Mkts., Inc. v. NLRB*, 961 F.2d 700, 703 (8th Cir. 1992) (emphasis added). Krhin participates in interviews and makes hiring recommendations that, "[f]or the most part," Nordic's owners follow. App. 382; R. Doc. 117, at 78. Krhin also

29

recommends discipline, discusses disciplinary issues with crew members, and recommends when employees should be fired. App. 383-84; R. Doc. 117, at 79-80. Krhin is responsible for assigning daily tasks to employees and for reviewing Nordic's schedule to recommend when employees should be laid off. *Id.* As he himself admitted, Krhin uses independent judgment in determining whether to hire, assign, lay off, discipline, or terminate, or to effectively recommend those actions, and he exercises his authority in the interest of his employer. App. 384; R. Doc. 117, at 80.

Plaintiffs attempted to dispute Krhin's deposition testimony by introducing declarations by Krhin and Nordic Vice President Craig Jouppi. *See* Opening Br. 19-20, 24-29, 31-32. The district court disregarded those declarations because Krhin's declaration contradicted deposition testimony, and Jouppi's declaration contained no specific facts. App. 18-19; R. Doc. 144, at 14-15. Plaintiffs now argue that Krhin's declaration was not a sham and that Jouppi's declaration cannot be disbelieved just because it lacks factual detail or specific examples. Opening Br. 32.

This Court reviews exclusions of evidence under the sham affidavit rule for abuse of discretion. *See Redd v. Depuy Orthopaedics, Inc.*, 700 F.

App'x 551, 553 (8th Cir. 2017) (per curiam); *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 867 (8th Cir. 2010). "An affidavit is a sham affidavit and should be disregarded 'if it contradicts prior testimony or is a sudden and unexplained revision of testimony that creates an issue of fact where none existed before.'" *Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021) (quoting *Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020)) (cleaned up).

Krhin's and Jouppi's declarations directly contradict Krhin's testimony. Krhin testified that he was a "site superintendent." App. 382; R. Doc. 117, at 78. The declarations label him a "senior carpenter." App. 112 para. 7; R. Doc. 128-3, at 2 para. 7; App. 117 para. 7; R. Doc. 128-5, at 2 para. 7. Krhin testified that he performs supervisory duties approximately sixty percent of the time. App. 382; R. Doc. 117, at 78. The declarations state that he spends approximately 95% of his time "performing tasks consistent with his role as a senior carpenter." App. 113 para. 12; R. Doc. 128-3, at 3 para. 12; *see* App. 117-18 para. 12; R. Doc. 128-5, at 2-3 para. 12 (same). Krhin testified that he assigns work to employees and decides whether layoffs are needed. App. 383-84; R. Doc. 117, at 79-80. The declarations state that Krhin has "no authority"

31

to assign or lay off employees "without first obtaining approval from his superiors." App. 112 para. 5; R. Doc. 128-3, at 2 para. 5; *see* App. 117 para. 5; R. Doc. 128-5, at 2 para. 5 (same). Rather than explain unclear testimony, the declarations contradict facts definitively established by Krhin's deposition. The district court therefore did not abuse its discretion by refusing to consider the declarations.

Plaintiffs also argue that Krhin's assignment authority is like that of a union foreperson. Opening Br. 23. Forepersons, however, are statutory supervisors if they assign employees to "significant overall tasks." *Oakwood Healthcare, Inc.*, 348 N.L.R.B. 686, 689 (2006); *see, e.g.*, *NLRB v. Broyhill Co.*, 514 F.2d 655, 658 (8th Cir. 1975). Krhin considers employees' experience levels to decide which employee will perform certain tasks on the project, and he decides when layoffs are needed. App. 383-84; R. Doc. 117, at 79-80. In other words, he is responsible for managing employees' overall tasks on the jobsite to keep his employer's projects moving. *See Schnuck Mkts.*, 961 F.2d at 704 (holding that worker responsible for assigning shift work and sending employees home if business was slow was a supervisor).

Appellate Case: 23-2450    Page: 46    Date Filed: 01/16/2024 Entry ID: 5353760

Finally, Plaintiffs assert that Krhin lacks authority to effectively recommend because management does not accept Krhin's recommendations "without conducting an independent investigation." Opening Br. 21. Plaintiffs failed to point to any evidence except that Krhin "discussed and recommended actions to ownership" before hiring, firing, etc. *Id.* Merely seeking management approval before acting does not disqualify someone from being a statutory supervisor. In *Schnuck Markets*, for example, the supervisor referred an employee to the store manager, who then fired the employee. The Court found that the supervisor's actions were an example of his authority to effectively recommend termination, even though management at least appeared to make the final call. 961 F.2d at 705.

Plaintiffs have failed to show that management actually overruled or even investigated any of Krhin's decisions. *See Transdev Servs., Inc. v. NLRB*, 991 F.3d 889, 899 (8th Cir. 2021). Instead, Krhin's deposition shows that *he* would "make [the] decision[]" on whether layoffs were needed and that *he* (not Nordic management) assigns work to specific employees. App. 383-84; R. Doc. 117, at 79-80. Therefore, the district court correctly held that Krhin is a supervisor, who would not have been

33

covered by the PLAs even if he had ever performed work subject to the PLAs.

## B.    CLA Does Not Have Associational Standing.

CLA failed to identify any members with standing to sue in their own right, and as a result, cannot demonstrate associational standing. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (A prerequisite to associational standing is that the association's "members would otherwise have standing to sue in their own right.").

The district court correctly held that CLA lacks standing because CLA has no members and thus cannot identify any member with standing.  App. 22; R. Doc. 144, at 18.  CLA President Tulenchik testified that CLA reported "[z]ero" members on its LM-2 reports (annual reports submitted to the Department of Labor under 29 U.S.C. § 431(b)).  App. 433; R. Doc. 117, at 129.  By reporting zero members on its LM-2 reports, CLA certified that no person has "fulfilled the requirements for membership" in CLA.  29 C.F.R. § 401.15.

Plaintiffs, however, argue that the district court should have considered a declaration submitted by Tulenchik that stated that members of CLA local unions are, in fact, members of CLA.  Opening Br.

34

37-38. But as explained above, the district court's decision to exclude sham evidence is reviewed for abuse of discretion. *See Redd*, 700 F. App'x at 553; *Cole*, 599 F.3d at 867. Tulenchik's declaration contradicted her deposition testimony, and therefore, the district court did not abuse its discretion by refusing to consider Tulenchik's sham declaration.

Plaintiffs also contend that CLA has standing on behalf of its locals because those locals have associational standing in their own right. Opening Br. 39. But as the district court held, CLA lacks associational standing because Krhin lacks standing and because no member of CLA local unions in Duluth, Cloquet, Two Harbors, or the Sanitary District was ever compelled to pay dues to a Building Trades union. App. 22-23; R. Doc. 144, at 18-19. Indeed, Tulenchik testified that no member of a CLA local has ever performed work subject to the PLAs. App. 423-25; R. Doc. 117, at 119-21.

Organizations claiming associational standing have to specifically "identify members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Without that evidence here, the Court cannot assure itself that any of CLA's members were actually "*categorically excluded* from working on projects subject to the

defendants' PLAs because of the union-security clause." Opening Br. 41. The only employee Plaintiffs specifically identify in their briefing is Krhin, who lacks standing. Therefore, under *Summers*, Plaintiffs have failed to meet their burden.

The record demonstrates that CLA cannot identify *any* member with standing. Tulenchik testified that no member of any CLA local in Duluth, Cloquet, Two Harbors, or the Sanitary District has ever worked on a PLA-covered project. And to Tulenchik's knowledge, no contractor employing members of a CLA local union in Duluth, Cloquet, Two Harbors, or the Sanitary District has ever bid for work on a PLA-covered project. App. 425; R. Doc. 117, at 121. Thus, no member of a CLA local union has ever experienced or been at risk of experiencing compelled subsidization of the Building Trades. Just like Krhin, CLA local union members suffered no injury "because their employers *refuse to seek* public-works contracts covered by the defendants' PLAs" for reasons that are completely unrelated to the PLAs' now removed union security provisions. Opening Br. 41

Appellate Case: 23-2450    Page: 50    Date Filed: 01/16/2024 Entry ID: 5353760

## C. The Contractors Do Not Have Standing.

On appeal, as before the district court, the Contractors concede that "the relevant *constitutional* claims belong to their employees rather than to them." Opening Br. 45; *see* R. Doc. 127, at 28. The Contractors also concede that they do not have third-party standing. Opening Br. 45 n.57. That should be the end of the matter. Yet, the Contractors contend that they suffered injury-in-fact "because they refrained from bidding on" PLA-covered projects and that each has standing to seek prospective relief "because they stand 'able and ready' to apply for contracts from the defendants." *Id.* at 42-43.

Absent third-party standing, plaintiffs "must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 500. The Contractors try to escape fundamental standing principles by claiming that because they seek relief under the Declaratory Judgment Act, they are asserting their own rights and legal relations, and therefore, do not have to satisfy the third-party standing test. Opening Br. 45. The Declaratory Judgment Act does not save the Contractors' lack of standing.

37

It is well-settled that the Declaratory Judgment Act "is procedural only." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). It "does not provide a means for standing." *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 897 n.2 (8th Cir. 2020). Instead, a plaintiff seeking relief under the Declaratory Judgment Act must independently demonstrate standing to seek that relief. *Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 637 (8th Cir. 2021); *see also Rauner v. AFSCME Council 31*, No. 15-cv-1235, 2015 U.S. Dist. LEXIS 65085, at *12 (N.D. Ill. May 19, 2015) (In case that would reach the Supreme Court as *Janus*, plaintiff governor did not have standing to bring a challenge under the Declaratory Judgment Act to the constitutionality of a law requiring subsidization of union.). Thus, Plaintiffs cannot use the Declaratory Judgment Act as a magic wand to transform their lack of third-party standing.

Beyond having no constitutional rights at issue of their own, the Contractors never suffered any injury in fact. As the contractors did in *Associated Builders & Contractors Western Pennsylvania*, here the Contractors "plead themselves out of court by admitting they never experienced or will experience" an actual injury because they have

38

"declare[d] they never have and never will bid on PLA-covered projects."
81 F.4th at 289.

Though the Contractors claim to be "able and ready" to bid on PLA-covered projects in the future, Opening Br. 43, that mere statement "does not cure their failure to bid in the past and admitted refusal to bid in the future." *Associated Builders & Contractors W. Pa.*, 81 F.4th at 290. Moreover, "able and ready" or "likely to apply" are not magic words that lower Plaintiffs' summary-judgment burden. Plaintiffs still have to show a personal, concrete, and imminent injury. *Carney v. Adams*, 141 S. Ct. 493, 503 (2020). Without evidence of a concrete intent to bid, Plaintiff Contractors have shown only "some day intentions" — not an injury in fact. *Id.* at 502 (quoting *Lujan*, 504 U.S. at 564).

Further, even if their "some day intentions" to bid were enough to be deemed an actual injury, that injury is not fairly traceable to the removed union-security clauses that purportedly violated the First Amendment. The Contractors must show a "causal connection between the assertedly unlawful conduct and the alleged injury." *Allen*, 468 U.S. at 753 n.19. The assertedly unlawful conduct here is the inclusion of the union security provisions. As explained above with respect to Krhin's

39

lack of standing, those provisions have long been removed, yet the Contractors continue to refuse to bid on PLA-covered projects. By definition, there is no causal connection between the now-removed union security provisions and the Contractors' alleged injury.

Nor can the Contractors save their failure to bid in the past and refusal to bid in the future by relying on such cases as *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville* (*AGC*), 508 U.S. 656 (1993). In that case, the constitutional claim was an equal protection claim based on a set-aside program that allowed only minority businesses to bid on certain government contracts. The Court held that the plaintiffs had standing even though they had not demonstrated that they had bid on and lost contracts because the injury suffered in such equal protection set-aside cases is the inability to compete for the set-aside contracts. *Id.* at 666. Here, the Contractors do not assert an equal protection claim, nor could they, since it is undisputed that the PLAs allow any contractor to bid on

Appellate Case: 23-2450     Page: 54     Date Filed: 01/16/2024 Entry ID: 5353760

projects covered by the PLAs.[6]  Because the Contractors could have competed for any PLA-covered construction project, cases such as *AGC* do not apply.  *Grahek v. City of St. Paul*, 84 F.3d 296, 298 (8th Cir. 1996) (holding that plaintiffs' reliance on *AGC* to assert standing was "misplaced" where the challenged policy was not a set-aside program); *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 690-91 (7th Cir. 2015) (same).

## III. Plaintiffs' Claim for Prospective Relief Against the Now-Removed Union Security Requirements Is Moot.

"Mootness has been described as the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484

---

[6]    The PLAs themselves, and the legislation enabling them, state that contractors need not be otherwise signatory to any union agreement to be awarded contracts to perform work subject to the PLAs.  Thus, the PLAs did not and do not set aside any contracts for particular types of construction contractors.  *See* Duluth, Minn., Legis. Code § 2-29(b); Cloquet, Minn., City Code § 9.2.02; Two Harbors, Minn., City Code § 2.77; App. 122; R. Doc. 121-1, at 2 (Duluth original PLA); App. 136; R. Doc. 121-2, at 2 (Cloquet original PLA); App. 175; R. Doc. 121-3, at 2 (Two Harbors original PLA); App. 529; R. Doc. 102, at 5 (Sanitary District PLA).

41

(8th Cir. 1998) (quoting A*rizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1977)). Just like standing, the mootness doctrine keeps courts within their Article III jurisdiction. Once "an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160-61 (2016) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

The district court declined to decide the mootness issue below, *see* App. 24 n.8; R. Doc. 144, at 20 n.8; however, Defendants raised the issue in their briefs and during oral argument, App. 62; R. Doc. 151, at 29, and "[t]his court may affirm the district court on any basis supported by the record." *Tatum v. Robinson*, 858 F.3d 544, 548 (8th Cir. 2017).

The removal of the challenged union security provisions moots any claim for prospective relief in this case. When a law or policy is amended or repealed, "actions seeking declaratory or injunctive relief for earlier versions are generally moot unless the problems are 'capable of repetition yet evad[ing] review.'" *Phelps-Roper v. City of Manchester*, 697 F.3d 678,

Appellate Case: 23-2450     Page: 56     Date Filed: 01/16/2024 Entry ID: 5353760

687 (8th Cir. 2012) (en banc) (quoting *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1036 (8th Cir. 2004)) (alteration in original).

The mere fact that the governing body making the amendment has the power to reenact the law or policy does not mean that the challenge to the original law or policy is capable of repetition yet evading review. Instead, to demonstrate that the challenge is capable of repetition yet evading review, a plaintiff must show that it is "virtually certain" that the repealed law or policy will be reenacted. *Young Am.'s Found. v. Kaler*, 14 F.4th 879, 886 (8th Cir. 2021) (quoting *Teague v. Cooper*, 720 F.3d 973, 977 (8th Cir. 2013)).

In *Kaler*, plaintiffs challenged a public university policy that allegedly violated the First Amendment. During the litigation the university changed the policy, "seemingly to address [the plaintiffs'] concerns." 14 F.4th at 886. The new policy was substantively different than the old one, "such that providing declaratory or injunctive relief with respect to the [old policy] would have no effect on the [new] policy." *Id.* at 887. Because the plaintiffs were not "virtually certain" that the old policy would be reenacted, their claim for prospective relief was moot. *Id.*

43

Here, the Public Entities with PLAs that previously contained union security clauses each approved resolutions in March 2021 removing those clauses from their PLAs. *See* App. 646; R. Doc. 30-1, at 2 (Two Harbors); App. 668-69; R. Doc. 29-1, at 2-3 (Cloquet); App. 690; R. Doc. 27-1, at 1 (Duluth). The amendments to the PLAs also added the following sentence: "Nothing in this Agreement requires employees to join a union or pay dues or fees to a union as a condition of working on the covered project." App. 650; R. Doc. 30-1, at 6 (Two Harbors); App. 672; R. Doc. 29-1, at 6 (Cloquet); App. 693; R. Doc. 27-1, at 4 (Duluth). The Public Entities' amendments thus fully avoided the risk that a nonmember employee would be forced to join or subsidize one of the Unions.

And the Public Entities are far from virtually certain to reenact the challenged provisions: Each Public Entity's vote was unanimous. *See* App. 644 para. 4; R. Doc. 30, at 2 para. 4 (Two Harbors); App. 666 para. 4; R. Doc. 29, at 2 para. 4 (Cloquet); App. 689 para. 4; R. Doc. 27, at 2 para. 4 (Duluth). What's more, the Building Trades supported Duluth's, Cloquet's, and Two Harbors' amendments to their PLAs to remove the union security provisions. App. 497 para. 14; R. Doc. 105, at 5 para. 14;

44

App. 684; R. Doc. 28-1, at 1; App. 685; R. Doc. 28-2, at 1; App. 686-87; R. Doc. 28-3, at 1-2.

In reply, Plaintiffs can be expected to argue, as they did at oral argument below, that applying *Kaler* and other Eighth Circuit precedent here is inconsistent with the Supreme Court's decision in *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007). *See* App. 84-85; R. Doc. 151, at 51-52. But *Parents Involved* is not to the contrary. There, a school district ceased using a race-based student assignment system during litigation, but only "pending the outcome of [the] litigation." 551 U.S. at 719. Thus, had the school district prevailed, it was virtually certain that it would reenact the policy. The same is not true here.

## IV. Plaintiffs' Constitutional Claim Fails on the Merits.

This Court should not reach the merits of Plaintiffs' claim because "[w]ithout standing, 'this court does not have jurisdiction to decide any other issues raised on appeal.'" *Finneman v. Laidlaw*, 57 F.4th 605, 608 n.2 (8th Cir. 2023) (quoting *U.S. Dep't of Just. v. Mandanici* (*In re Starr*), 152 F.3d 741, 747 (8th Cir. 1998)). If the Court does reach the merits, it should affirm the district court's alternative holding that *Janus* does not

45

apply to the now-removed union security provisions because "the employees working under the PLAs are employees of private-sector employers . . . and the terms of the employment under the PLAs are established through private-sector collective bargaining." App. 32; R. Doc. 144, at 28.

### A. The PLAs Cover Private-Sector Employees, and the Supreme Court Has Held that Union Security Clauses Covering Private Sector Employees Are Constitutional.

Plaintiffs exaggerate the scope of *Janus* by asserting that under that case, "a municipality cannot require the employees *of its contractors* to join or pay a union." Opening Br. 45 (emphasis added). But the issue in *Janus* was whether the Supreme Court correctly held in *Abood v. Detroit Board of Education* that a union security clause did not violate "the constitutional rights of *government* employees." *Abood*, 431 U.S. 209, 211 (1977) (emphasis added); *see Janus v. AFSCME Council 31*, 138 S. Ct. 2448, 2460 (2018). The Court overruled *Abood*, holding that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Janus*, 138 S. Ct. at 2486; *see also id.* at 2485 n.27. In so holding, the Court noted that *Abood* "did not sufficiently take into account the difference between the effects of agency fees in public

46

and private-sector collective bargaining." *Id.* at 2480. Only the latter — private-sector collective bargaining — applies to this case.

Here, the employees subject to PLAs do not work for the Public Entities. They are employees of private-sector contractors, and as such, their employment is governed by the National Labor Relations Act. *See* 29 U.S.C. § 152(2) (defining "employer" to exclude public-sector employers). The constitutionality of union security clauses under the National Labor Relations Act evolved from cases addressing those agreements under the Railway Labor Act.

In *Railway Employes' Department v. Hanson*, 351 U.S. 225, 232 (1956), the Court found that a Railway Labor Act provision allowing union security clauses implicated the First Amendment. On the merits, the Court held that "the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work . . . does not violate the First . . . Amendment[]." *Id.* at 238. The Court's holding reserved the question whether "the exaction of dues . . . is used as a cover for forcing ideological conformity or other action in contravention of the First Amendment." *Id.*

47

In *International Ass'n of Machinists v. Street*, 367 U.S. 740, 749 (1961), the Court avoided squarely addressing the "constitutional questions reserved in *Hanson*." The Court held that although the Railway Labor Act allowed unions and private-sector rail employers to enter into agreements that require all covered employees "to share the costs of negotiating and administering collective agreements," it did not "provide the unions with a means for forcing employees, over their objection, to support political causes which they oppose." *Id.* at 764.

In *CWA v. Beck*, 487 U.S. 735 (1988), the Court held that *Hanson* and *Street*'s analysis is "controlling" for employment relationships covered by the National Labor Relations Act. *Id.* at 745-46.

The Supreme Court has recognized that *Hanson*, *Street*, and *Abood* establish that the First Amendment "permits the government to require both public sector and private sector employees who do not wish to join a union designated as the exclusive collective-bargaining representative at their unit of employment to pay that union a service fee as a condition of their continued employment." *Locke v. Karass*, 555 U.S. 207, 213 (2009). In *Janus*, the Supreme Court overruled *Abood*, but it did not overrule

48

*Hanson* or *Street*. That means the First Amendment principle recognized in *Locke* continues to apply to private-sector employees.

Plaintiffs and their amicus argue that the Public Entities could "evade *Janus*" by contracting out work. Opening Br. 47; *see* Amicus Br. 8. But that argument ignores the Court's extended distinction between the public and private sectors in both *Harris v. Quinn,* 573 U.S. 616 (2014) and *Janus*. In *Harris*, the Court addressed the application of a union security clause to "quasi-public"/"partial-public" personal assistants, who are excluded from coverage under the National Labor Relations Act. *See* 29 U.S.C. § 152(3). In deciding what caselaw applied, the Court held that there was a difference between collective bargaining in the public and private sectors. In the public sector, "both collective-bargaining and political advocacy and lobbying are directed at the government," while in the private sector, the line between collective-bargaining and political purposes "is easier to see." *Harris*, 573 U.S. at 636-37. Extending caselaw covering public-sector employment relationships to "partial-public employees, quasi-public employees, *or simply private employees* would invite problems." *Id.* at 646 (emphasis added).

In *Janus*, the Court relied on *Harris* to differentiate between collective bargaining covering private sector employees and public sector employees. "[I]n the public sector, core issues such as wages, pensions, and benefits are important political issues [of overwhelming public concern], but that is generally not so in the private sector." *Janus*, 138 S. Ct. at 2477, 2480 (quoting *Harris*, 573 U.S. at 636). Informed by the Supreme Court's careful parsing of First Amendment precedent in *Harris* and *Janus*, this Court must apply the Supreme Court's cases applying to private-sector, National Labor Relations Act-covered bargaining relationships.

### B. This Court Has Recognized that *Janus* Is Limited to Its Facts.

The Court must "follow the [Supreme Court] case which directly controls," which, in this case, is *Beck* and not *Janus*. *Fleck v. Wetch*, 937 F.3d 1112, 1115 (8th Cir. 2019). *Janus* is limited to the exaction of union fees from public employees' wages without employee consent. *See Janus*, 138 S. Ct. at 2486.

This Court recognized that *Janus* is limited to its facts in *Fleck* — a challenge to the collection and use of annual dues by North Dakota's

50

integrated bar.[7]   Under *Lathrop v. Donohue*, 367 U.S. 820 (1961), compulsory membership in a state bar association does not violate lawyers' First Amendment right of association.   *Id.* at 842-43 (plurality opinion), 849 (Harlan, J., concurring).   And under *Keller*, 496 U.S. at 14, integrated bar associations may require dues only to the extent they fund expenditures germane to the regulation of the legal profession or improvement of the quality of legal services.   Thus, integrated bars may operate similar to the way in which private-sector unions may under *Hanson*, *Street*, and *Beck*.   Indeed, in upholding the constitutionality of union security requirements under the Railway Labor Act in *Hanson*, the Supreme Court noted that "there is no more an infringement or impairment of First Amendment rights than there would be in the case of a lawyer who by state law is required to be a member of an integrated bar."   351 U.S. at 238.

In *Fleck*, the plaintiff challenged North Dakota's integrated bar and argued that "*Keller's* theoretical underpinnings ha[d] been undercut by

---

[7]   States with an "integrated bar" require attorneys to pay membership dues in order to practice law. *Keller v. State Bar of Cal.*, 496 U.S. 1, 4-5 (1990).

Appellate Case: 23-2450      Page: 65      Date Filed: 01/16/2024 Entry ID: 5353760

*Janus*." 937 F.3d at 1114. This Court rejected that argument, recognizing that *Janus* "held that no fee or payment to the union 'may be deducted from a nonmember's wages . . . unless the employee affirmatively consents to pay . . . before any money is taken." *Id.* at 1117 (quoting *Janus*, 138 S. Ct. at 2486) (omissions in original). Attorneys, by contrast, under the integrated bar association at issue, "are not paid public sector wages, and [the integrated bar association] does not automatically deduct annual dues from any source of member funds." *Id.* at 1118. That same distinction applies with respect to the payment of union dues at issue in *Janus* and the law regarding the manner in which dues may be paid in the private sector.[8]

In *Janus*, the challenged law was the Illinois Public Labor Relations Act. 138 S. Ct. at 2459-60. Under that law, the union representing the public employees categorized its expenditures as

---

[8] Other Circuits have also unanimously upheld *Lathrop* and *Keller* against post-*Janus* challenges. *See Boudreaux v. La. State Bar Ass'n*, No. 22-30564, 2023 U.S. App. LEXIS 30142, at *18 (5th Cir. Nov. 13, 2023); *File v. Martin*, 33 F.4th 385, 391-92 (7th Cir. 2022), *cert. denied*, 91 U.S.L.W. 3180 (U.S. Jan. 23, 2023) (No. 22-95); *Schell v. Chief Just. & Justs. of the Okla. Sup. Ct.*, 11 F.4th 1178, 1190-91 (10th Cir. 2021); *Taylor v. Buchanan*, 4 F.4th 406, 409 (6th Cir. 2021); *Crowe v. Or. State Bar*, 989 F.3d 714, 725 (9th Cir. 2021).

Appellate Case: 23-2450     Page: 66     Date Filed: 01/16/2024 Entry ID: 5353760

chargeable or nonchargeable to determine a proportionate share. The employer then "automatically deduct[ed] that amount from the nonmembers' wages." *Id.* at 2461. Federal law governing the labor relations of private sector employees prohibits such an automatic deduction without an employee's consent. Instead, under Section 302 of the Labor-Management Relations Act, an employer may not deduct union dues from an employee's pay unless and until the employee has signed a written authorization for the employer to do so. 29 U.S.C. § 186(c)(4) (The general prohibition on the payment of anything of value from an employer to a union does not apply to money deducted from the wages of employees for the payment of union dues, provided the employer has received from each employee a written assignment to do so.). Thus, as in *Fleck*, there is Supreme Court precedent — *Beck* — on point and controlling, which upholds the constitutionality of the now-removed union security provisions, and as in *Fleck*, contractors working under the PLAs could not automatically deduct union dues from employees' pay without their consent.

Appellate Case: 23-2450     Page: 67     Date Filed: 01/16/2024 Entry ID: 5353760

### C. Other Circuits Hold that Janus Does Not Apply in the Private Sector.

The Court in this case should affirm the district court and thus join the other federal courts, which have unanimously held that *Janus* does not apply to private-sector employment relationships.[9] The Supreme Court's careful distinction between collective bargaining covering employees of public entities compared to that covering private sector employees factored into the refusal to extend *Janus* to cover employees of private sector employers. In *Rizzo-Rupon*, the Third Circuit stressed that "*Janus* took pains to distinguish" cases involving employees of private sector employers, and noted that those cases presented a "'very different First Amendment question' than the public-sector unions at issue in *Janus*." 822 F. App'x at 50 (quoting *Janus*, 138 S. Ct. at 2479). The Fifth Circuit agreed in *Baisley*, explaining that "*Janus* itself cautions

---

[9] *See Baisley v. Int'l Ass'n of Machinists*, 983 F.3d 809, 810-11 (5th Cir. 2020); *Rizzo-Rupon v. Int'l Ass'n of Machinists Dist. 141*, 822 F. App'x 49, 49-50 (3d Cir. 2020); *Shimose v. Int'l Longshore Union Loc. 142*, No. 21-cv-489, 2023 U.S. Dist. LEXIS 56155, at *16-17 (D. Haw. Mar. 31, 2023); *Popp v. Air Line Pilots Ass'n, Int'l*, No. 19-cv-61298, 2020 U.S. Dist. LEXIS 52813, at *5-6 (S.D. Fla. Mar. 25, 2020).

54

against" extending its holding to cover employees of private sector employers. 983 F.3d at 810.

### D. The PLAs Not Only Cover Only Private-Sector Employment, but the PLAs' Economic Terms Are Set by Private-Sector Collective Bargaining.

*Janus* distinguished private sector collective bargaining, and stated, "[i]n the public sector, core issues such as wages, pensions, and benefits are important political issues, but that is generally not so in the private sector." 138 S. Ct. at 2480 (quoting *Harris*, 573 U.S. at 636). The PLAs leave negotiation of wage rates, hours, fringe benefit contributions, and referral procedures to the private employers and local unions. App. 494 para. 5; R. Doc. 105, at 2 para. 5. Unlike collective bargaining agreements in the public sector, the Unions and private employers' collectively bargained agreements on economic conditions are private agreements and would not, for example, "have a serious impact on the budget of the government unit in question." *Janus*, 138 S. Ct. at 2473. The PLAs therefore do not involve any of the inherently political speech targeted by *Janus*.

55

### E. The Removed Union Security Provisions Did Not Require Union Membership.

Plaintiffs assert that the now-removed union security clauses compelled not only payment but membership and that Defendants produced no evidence to the contrary. Opening Br. 48. Plaintiffs are simply wrong. The PLA language on which they rely does not carry the meaning Plaintiffs advance in their argument to the Court, and the record shows neither compelled payments nor compelled membership.

The now-removed union security clauses stated that employees must "become members of the respective Unions within seven (7) days after the date of their employment." App. 124; R. Doc. 121-1, at 4 (Duluth); App. 138; R. Doc. 121-2, at 4 (Cloquet); *see* App. 177; R. Doc. 121-3, at 4 (Two Harbors) (similar). As the district court correctly found, the term "member" "incorporates the 'refinements' of such language in case law." App. 32 n.10; R. Doc. 144, at 28 n.10 (citing *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 36, 38, 44 (1998)). Specifically, the meaning of "member" is governed by *NLRB v. General Motors Corp.*, 373 U.S. 734 (1963), and *Beck*. *Marquez*, 525 U.S. at 46. Under *General Motors*, the term "member" means that a union may require only the "financial core" of membership — not that employees must actually join

56

a union. 373 U.S. at 742. And under *Beck*, as discussed above, unions may use compelled agency fees only for activities germane to collective bargaining. 487 U.S. at 745.

Therefore, under the union security clauses, no employee would ever be required to join one of the Unions. Indeed, the record is undisputed that no Union ever enforced the now-removed union security clauses against an employee of a contractor that was not otherwise independently signatory to the Unions' local private area labor agreement. No employee of a contractor that is not otherwise signatory to the affiliated union's local area labor agreement and who is working under the PLAs has ever been required to pay any dues or fees as a condition of working under those PLAs. App. 497 para. 15; R. Doc. 105, at 5 para. 15.

\*     \*     \*

Accordingly, because the PLAs cover only private-sector employees, and the National Labor Relations Act governs their employment, *Janus* does not apply. Instead, under the Supreme Court's jurisprudence in *Hanson*, *Street*, and *Beck*, the challenged and now-removed union security provisions are lawful. Moreover, even under *Janus*, the PLAs

Appellate Case: 23-2450     Page: 71     Date Filed: 01/16/2024 Entry ID: 5353760

are distinguishable because they do not require the exaction of dues without consent, their economic terms are the result of private sector bargaining, and they never required employees to become union members.

## CONCLUSION

This Court should affirm the district court's grant of summary judgment in Defendants' favor.

Appellate Case: 23-2450    Page: 72    Date Filed: 01/16/2024 Entry ID: 5353760

Respectfully submitted,

JESSICA J. FRALICH,
   City Attorney

  and

s/ Jonathan D. Newman
Jonathan D. Newman
   D.C. Bar No. 449141
Lucas R. Aubrey
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh St., N.W., Suite 1000
Washington, D.C. 20001
(202) 785-9300

s/ Elizabeth Sellers Tabor
Elizabeth Sellers Tabor
Assistant City Attorney
Paige Orcutt
Assistant City Attorney
DULUTH CITY ATTORNEY'S OFFICE
411 W. First St., Suite 410
Duluth, MN 55802

*Counsel for City of Duluth*

s/ Monte A. Mills
Monte A. Mills
Amran Farah
Emily M. McAdam
GREENE ESPEL PLLP
222 S. Ninth St., Suite 2200
Minneapolis, MN 55402

Timow W. Andrew
ANDREW & BRANSKY
302 W. Superior St., Suite 300
Duluth, MN 55802

*Counsel for Duluth Building and Construction Trades Council*

*Counsel for City of Cloquet, City of Two Harbors, and Western Lake Superior Sanitary District*

January 16, 2024

59

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Rule 32(a)(7)(B) because, excluding the parts of the document exempted by Rule 32(f), it contains 11,660 words.

2. This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Century Schoolbook font and fourteen-point type.

3. In accordance with Local Rule 28A(h)(2), this brief has been scanned for viruses using VIPRE Endpoint Security and is free of viruses.

s/ Jonathan D. Newman
Jonathan D. Newman
*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I certify that on January 16, 2024, this brief was filed using the Court's CM/ECF system. All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

s/ Jonathan D. Newman
Jonathan D. Newman
*Counsel for Defendants-Appellees*